**In re SEAMAN.**

**No. 1845.**

District Court, E. D. Missouri, N. D.

May 25, 1939.

Elgin T. Fuller, of Hannibal, Mo., for debtor.

Charles E. Rendlen and Rendlen, White & Rendlen, all of Hannibal, Mo., and Hiller & Hiller of Kahoka, Mo., for claimant.

DAVIS, District Judge.

George W. Seaman, on February 24, 1934, filed in the District Court a debtor's petition under Section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202.

The petition lists the holder of one note for $1,000 as a secured creditor, and recited that this note was one of five notes aggregating $4,600, which were secured by a deed of trust dated March 1, 1936, on 140 acres of land located in Clark County, Missouri. The other four notes aggregating $3,600 having been paid by Petitioner's father, J. A. Seaman, so the petition recited, and endorsed and delivered by the father to Petitioner.

Fred C. Krueger, Administrator of the estate of J. A. Seaman, who died on January 2, 1934, filed in the debtor proceeding a claim based upon the four notes above mentioned aggregating $3,600, and asserted that they were assets of the said estate, and that said notes had improperly and unlawfully come into the hands of the Debtor.

The Debtor filed objection to the allowance of the claim of the Administrator, and asserted that the notes were not assets of the estate of J. A. Seaman for the reason that in his lifetime, for a consideration, the deceased had endorsed and delivered the notes to the Debtor, his son.

The Referee heard the testimony of the witnesses, and upon consideration of the case, on June 12, 1937, entered an order sustaining the Debtor's motion to disallow the claim of the Administrator of the estate of J. A. Seaman.

The Administrator filed a petition to review the order of the Referee. In his certificate, the Referee stated that the issues were whether or not there was error

in the holding (1) that J. A. Seaman had for a consideration endorsed and delivered the notes to George W. Seaman, Debtor, and (2) that the Administrator could not, under the law of Missouri, attack a transfer of property by his intestate as being fraudulent as to his creditors.

The Referee, in his certificate for review, further summarized the evidence, commented upon its unsatisfactory and conflicting character, and handed to the Court a transcript of the evidence, and all other papers bearing upon the issues made in the petition for review.

The case presents, as the Referee stated, "a very ugly quarrel and dissention between the children of the deceased, J. A. Seaman", the Debtor and his sister, Mrs. Margaret E. Shrock, on the one side, and two other sisters, Mrs. Nellie E. Edlen and Mrs. Lenne Calvert, and the Administrator, on the other side.

The Debtor, with his wife and eight children, formerly resided on his farm of 140 acres in Clark County, but on September 1, 1929, he moved to Iowa, where he has ever since resided, although he claims only temporarily, and without intention to give up his domicile in this state. In 1926 he placed a deed of trust on this farm, securing the payment of the notes above mentioned aggregating $4,600, and falling due five years after date.

The Debtor's father and mother lived on a farm of 200 acres, free from debt, across the road from Debtor's land. In 1931 J. A. Seaman, then about 77 years of age, placed a deed of trust securing a note of $1,600 on his farm, and borrowed $400 in addition from the Exchange Bank of Kahoka, Missouri, and with the sum of $2,000 thus obtained, bought the four notes aggregating $3,600 secured by the deed of trust on the Debtor's farm, which are the subject of this controversy.

A foreclosure proceeding under the deed of trust, commenced upon request of the holder of the outstanding $1,000 note, induced the Debtor to file this case under the Bankruptcy Act, and thereby the foreclosure was restrained.

After J. A. Seaman acquired the four notes of the Debtor, he requested his son to execute to him a deed to Debtor's farm subject to the deed of trust then of record. J. A. Seaman had such a deed prepared in January, 1933, and sent the same to the Debtor for execution. The Debtor expressed a willingness to execute the deed,

but this was not done, because Debtor's wife refused to sign such a deed.

J. A. Seaman died in January, 1934, and after his death, the Debtor produced the four notes in question purporting to be endorsed without recourse by J. A. Seaman, and a contract purporting to have been executed by Debtor and J. A. Seaman on November 1, 1933, by which instrument the father, in consideration of the receipt of twenty-one head of stock and labor performed, transferred the notes in question to his son.

The execution of these instruments by J. A. Seaman was testified to by Debtor's sister, Mrs. Shrock, who stated that she witnessed the signature of her father on the contract. The Debtor's wife stated that she received the instruments when delivered by mail in Iowa.

The Referee found that the force of the direct evidence of these witnesses, though not of a convincing nature, was not overcome by less direct evidence to the contrary.

There is in the record evidence and circumstances that contradict the conclusion that J. A. Seaman endorsed and delivered these notes to his son.

The force of the testimony of the Debtor is weakened by his interest and conduct as disclosed by the record. The statute in some instances disqualifies a witness where the other party to the transaction is dead. Human beings unrestrained are prone to overreach. The disqualification of the Debtor was waived, but this did not remove the infirmity of his testimony. Yet, this witness did not testify to the actual endorsement and delivery of the notes in question. The only witness on that matter was Mrs. Shrock. Her testimony was discredited by her interest, by many conflicting written and oral statements, one instance of which was that in 1934 she made an affidavit that the notes "were delivered in my presence", while at the hearing before the Referee she testified that they were mailed to her brother at Fairfield, Iowa.

J. A. Seaman spent his entire life in Clark County. He was an industrious farmer, who paid his debts, had credit at the local bank, and at the age of 77 his 200 acre farm was free from debt. If the Debtor's version of this transaction is correct, J. A. Seaman ended his career by disposing of substantially all his estate to the

detriment of those who had just demands upon his property.

The consideration for the conveyance was not only out of proportion to the value exchanged, but there is no substantial evidence that it existed at all. It was said to be several head of live stock delivered to the father about 1928, while the check book of J. A. Seaman disclosed that he paid his son for a similar or the same herd of stock in the year of 1927. J. A. Seaman, in financial statements filed with his bank, never listed this debt to his son.

J. A. Seaman, at the very time the contract was said to have been executed, was still endeavoring to have the Debtor convey his farm, in which he no longer had any equity, to the father in payment of the notes. The father at that time had outstanding obligations at the local bank, as well as other debts. When informed by the Debtor that his wife would not sign the deed, the father stated that he would foreclose the deed of trust. J. A. Seaman at no time disclosed a disposition to impoverish his estate by the surrender of these notes.

J. A. Seaman kept these notes, along with other papers, at his home "under a marble slab on the table." All members of the family, including Debtor, who was frequently in his father's home, well knew that fact.

Mrs. Edlen, daughter of J. A. Seaman, and June Calvert Howell, a grand-daughter, both testified that Mrs. Margaret E. Shrock told them on several occasions that Debtor said that he would take his notes from the table if she (Mrs. Shrock) would take hers. The father also held notes of Mrs. Shrock, who lived with her father for eleven months prior to his death. This debt also is said to have been forgiven.

In addition to these facts, there exists a dispute as to the genuineness of the signature of J. A. Seaman on the back of the notes and on the contract. A careful study has been made of the testimony of the witnesses on this subject. This has been supplemented by an independent examination and comparison of these purported signatures with the many genuine signatures offered in evidence, or otherwise appearing in the record. Reference is here made to the signatures appearing upon the schedules filed in the case.

As a result of this examination, we have reached the conclusion that the name J. A. Seaman has been forged upon the back of the four notes in question, and upon the alleged contract.

This conclusion is based, in part, upon several variations found from the genuine signature, the principal ones of which are: (1) The tremble that appears in the initial "J" more or less disappears in the remainder of the letters in the name. (2) The first stroke of the capital letter "A" in the genuine signature is straight, while in the accused signatures it is sweeping and curved. (3) The downward stroke of the capital "S" in the genuine signature is curved, while in the purported signatures on these instruments it is more or less perpendicular. This is regarded as the outstanding variation. (4) The tops of the letters "m" and "n" in the questioned signatures are inclined to be pointed, while in the genuine signature they are rounded.

J. A. Seaman had the undisputed title to the notes in question. That title ought not be divested except upon cogent proof. It is not to be found in this record. The greater weight of the evidence, in our judgment, supports the position of the Administrator that these notes were not endorsed and delivered by the father to his son.

The question as to whether an Administrator may recover a transfer made by his intestate in fraud of creditors is not, as it seems to us, in this case. It is not asserted that the deceased transferred the notes in question to injure his creditors. The claim is that he did not transfer them.

Consideration has been given to Claimant's contention in his brief that the Court has no jurisdiction of the case because Debtor is not a resident of Missouri. This argument, if made, evidently did not impress the Referee. The Debtor testified he has not changed his domicile, and has not abandoned his homestead. Under the circumstances, we are not able to say with assurance that the Court is without jurisdiction.

The Order of the Referee entered on June 12, 1937, sustaining the objections of the Debtor to the claim of Fred C. Krueger, Administrator of the estate of J. A. Seaman, deceased, and expunging the said claim from the allowed claims, should be and is set aside; and the said claim in the sum of $3,600 with interest is reinstated and allowed as a valid claim in this proceeding.